IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-877

| | |
|---|---|
| DANNY HINSON and DYLANA HINSON, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) **ORDER** |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

This matter is before the Court on defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. [DE 31]. The motion is ripe for adjudication. For the reasons discussed below, defendant's motion is denied.

## BACKGROUND

For purposes of the motion to dismiss, the facts pled in plaintiffs' complaint are assumed to be true.

This case arises out of injuries sustained by plaintiff Danny Hinson on February 14, 2012, at Module E building of the National Institute of Environmental Health Sciences ("NIEHS") in Research Triangle Park, North Carolina. Plaintiff was employed by NVT Technologies as a maintenance lighting electrician. On February 14, 2012, plaintiff was assigned to repair an inoperable lightening circuit servicing the mice labs in the basement of the Module E building; plaintiff understood this request to be an emergency call requiring immediate attention with no time for delay and consequently stayed beyond the end of his shift to make the repair.

The repair had to take place in an interstitial space above the basement hallway. Plaintiff accessed the space through a wall-mounted fixed ladder which led to an access door which stood approximately ten feet above the concrete floor below. Plaintiff was not aware that the locking mechanism on this door was different from others he had worked with, and when he unlocked the door it swung open; plaintiff was knocked off the ladder and hung on to the door by the handle and the key he had used, but the key broke and he fell to the floor. That access point did not have a safety cage or platform, and that type of ladder-door combination had been determined to be a safety hazard by defendant months earlier. Other employees had also experienced difficulties with this access point but plaintiff was not warned of the danger. Another ladder and access door in the same corridor providing access to a different area of the same interstitial space was constructed with a safety cage, extended ladder side rails, and a hinge that allowed the door to swing inwards.

Though he testified he felt like he was walking on a cloud, plaintiff completed his work assignment that evening. Plaintiff refused to seek medical treatment at first but was later treated for a left wrist fracture and tendon rupture, flare-up of pre-existing wrist arthritis, and acute bilateral shoulder and knee injuries which necessitated surgery.

## DISCUSSION

*Motion to Dismiss*

Defendant has first moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir.

2

1999). When a facial challenge to subject matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The Court can consider evidence outside the pleadings without converting the motion into one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

It is well-settled that the United States, as sovereign, is immune from suit unless it has consented to be sued. *United States v. Sherwood*, 312 U.S. 584 (1941). The "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* at 586; *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). The Federal Tort Claims Act ("FTCA") provides the sole waiver of sovereign immunity for tort actions against the United States. 28 U.S.C. §§ 1346 and 2671 *et seq*. The FTCA provides for monetary compensation when a government employee, acting within the scope of employment, injures another by a negligent or wrongful act or omission.

The FTCA's sovereign immunity waiver is subject to the discretionary function exception, which provides that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In *United States v. Gaubert*, 499 U.S. 315 (1991), the Supreme Court formulated a two-part test to determine the applicability of the discretionary function exception. First, the exception applies only where the act involves judgment or choice and no "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Second, the exception "protects only governmental actions and decisions based on considerations of public policy." *Id.*

This first question in this test turns on whether any mandatory federal statute, regulation, or policy prescribes a specific course of conduct. *Berkovitz*, 486 U.S. at 536. The only regulation cited by the parties as bearing on the safety of the ladder in questions is a safety directive promulgated by OSHA at 29 C.F.R. 1910.27. However, 29 C.F.R. 1910.2(c) excludes the United States from the definition of "employer" and therefore makes this rule non-binding on defendant. Plaintiffs do not dispute this interpretation of the directive or that the action involved an element of judgment or choice. As a consequence, the government's choice of ladder design was not constrained by any "federal statute, regulation, or policy," and the Court may proceed to prong two of the discretionary function analysis.

Under the second prong of the discretionary function analysis, the Court must consider "whether that judgment is of the kind that the discretionary function exception was designed to shield, i.e., whether the challenged action is based on considerations of public policy." *Indem. Ins. Co. of North America v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). The second prong addresses the need "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy. . ." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) et al.*, 467 U.S. 797, 814 (1984). The Court should not limit "discretionary acts deserving of immunity . . . to policymaking or planning decisions; day-to-day management can also involve discretionary choices grounded in regulatory policy. It is now settled that the day-to-day operational decisions of government are entitled to immunity under the FTCA so long as the choices are susceptible to policy analysis." *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002).

In considering the second prong, the Court must ask whether the action in dispute "involved the kind of policy judgment that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 332. The Fourth Circuit has provided further guidance that the reviewing court "in the usual case is to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993).

Under Fourth Circuit precedent, "[t]he decision of how and when to replace a major element of a substantial public facility is, like the decisions involving design and construction, at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages." *Baum*, 986 F.2d at 724. However, the court in *Baum* was careful to caution that "we do not suggest that every maintenance decision of every government actor is so policy-based as to fall within the discretionary function exception . . . ." *Id.*

Under this guidance, although the discretionary function exception is to be widely interpreted to cover many actions involving design and substantial repair of public facilities, there is still a floor below which agency decisions, even if affecting resource constraints of the relevant agency, become non-policy based. To hold otherwise would allow the discretionary function exception to swallow the FTCA entirely such that every decision by an agency would be subject to the discretionary function exception, no matter how small or inconsequential to the mission of the agency as a whole. Budgetary constraints and the allocation of resources underlie virtually every government decision, but the discretionary function exception is not meant to

5

shield virtually every decision from liability. *See ARA Leisure Services v. United States*, 831 F.2d 193, 196 (9th Cir. 1987) (holding that "the fact that Park Service maintenance personnel were required to work within a budget does not make their failure to maintain Thoroughfare Pass a discretionary function for purposes of the FTCA"). This is line with the decisions of this and other circuits, which have held generally that not every instance in which government action could arguably implicate budgetary constraints or safety concerns should be covered by the exception. *See, e.g., Baum*, 986 F.2d at 724 ("we do not suggest that every maintenance decision of every government actor is so policy-based as to fall within the discretionary function exception . . . ."); *ARA Leisure Services*, 831 F.2d 193; *Gotha v. United States*, 115 F.3d 176 (3d Cir. 1997) (holding that the failure to provide a stairway with handrails and sufficient lighting along a path at a Navy base was not covered by the discretionary function exception because policy considerations such as budgetary constraints or safety concerns "conceivably could go to any decision by the Navy, from contracting for highly complex missiles to patching a hole in the floor of an office building").

Defendant argues that the agency's decisions involving the safety and operation of the ladder were discretionary and involved several competing public policy considerations, including providing better access to mechanical areas in the interstitial space that were essential to the accomplishment of the agency's mission, minimizing collateral adverse impacts on the agency's mission that might be caused by altering the existing ductwork or impeding movement through the corridor, working within budgetary constraints, and workplace safety. Defendant argues that while alternative, and perhaps safer, features for the ladder could have been added, the decision not to modify the ladder or take it out of service represents a balancing of the above policy

considerations that is entitled to protection under the discretionary function exception to the FTCA.

Plaintiffs argue that defendant's actions, while involving an element of choice, are discretionary without being policy-based. While there is some degree of discretion in any government action, plaintiffs argue that defendant's failure to implement recommended safety changes to the ladder and its failure to remove the ladder from service are negligent actions that do not engage such an exercise of policy judgment as to rise to the level of a discretionary government function. Plaintiffs argue this is because replacement of the ladder or removal from service is not an action inherently involving choice and policy considerations, and the failure to timely implement a decision to modify a ladder, particularly one made approximately six months prior to the subject incident, has no relationship to recognized policy considerations. Plaintiffs argue that these actions are instead low-level maintenance decisions not grounded in considerations of policy. Plaintiffs additionally argue that there is no regulatory regime applicable to defendant's actions in this case and that the challenged action does not implicate the function of the NIEHS as a whole.

The Court finds that the actions of the government in maintaining this service ladder are not the types of actions that the discretionary function exception was meant to shield from liability. While such actions necessarily involved some consideration of costs and priorities, the choice of whether to begin or delay implementation of recommended safety changes or whether to remove a ladder from service hardly implicate such considerations of economic, social, or political policy as to constitute a choice of federal government policy. Although defendant argues that NIEHS was working within budgetary constraints and had to exercise judgment and discretion in determining whether and when to implement the recommended safety changes to

7

the ladder, not every instance in which government action could arguably implicate budgetary constraints or safety concerns should be covered by the exception. Matters of cost, timing or priority for minor projects that are largely unrelated to the central mission or concerns of the agency are not matters of discretionary agency policy. Therefore, looking to the nature of the challenged decision in an objective sense, the Court does not find that contested actions are ones which one would expect inherently to be grounded in considerations of policy.

The Court also does not find it reasonable to conclude that such low-level maintenance decisions concerning a single ladder engaged such considerations of NIEHS's mission and priorities as to make them acts of agency judgment and policy. Rather, the actions at issue involved mundane decisions as to whether to install a safety cage or not and when to complete recommended safety projects. This was a single ladder in a multi-complex building, and there were several other ladders that provided access to the same interstitial space plaintiff was trying to reach. Defendant recited a number of design concerns in an effort to show that its decision not to upgrade the ladder's safety or take it out of service was policy based and necessitated by considerations of the agency's mission. However, the Court finds these justifications unpersuasive, especially considering the number of alternative access ladders into the interstitial space and the fact that other ladders in the same corridor were constructed with additional safety features, such as safety cages and extended ladder side rails.

In summary, the Court finds that because the government's decision not to add additional safety features to the ladder or take it out of operation before plaintiff's fall is not the type of action that is susceptible to the type of social, economic or political policy analysis meant to be shielded from tort actions, the discretionary function exception of the FTCA does not apply and

the Court has jurisdiction to hear the case. Therefore, defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

*Motion for Summary Judgment*

Defendant has also moved, in the alternative, for summary judgment. A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [factfinder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

As an initial matter, plaintiff requested that the Court rule in its favor on the issue of spoilation of security video evidence which captured the accident and which was overwritten while in defendant's possession. Plaintiffs urge the Court to make an inference in plaintiffs' favor as to the contents of the video and its evidentiary value. In reviewing the motion for summary judgment, the Court must view the record evidence in the light most favorable to plaintiffs. To the extent the video is material to this motion, the Court is already obligated to

draw reasonable inferences in favor of plaintiffs, as they are requesting. Thus, the Court need not at this time decide the issue of spoilation.

The Court finds, upon a thorough review of the entire record, that summary judgment is not warranted in this case. Several material facts remain in dispute concerning defendant's liability under North Carolina law. These facts are pertinent as to whether the alleged safety hazard of the ladder-access door combination was open and obvious and whether plaintiff was contributorily negligent in his choice or operation of the ladder.

Under North Carolina law, a landowner is held to "a duty to exercise ordinary care to keep its premises in a reasonably safe condition and to warn of any hidden dangers of which it knew or should have known." *Stallings v. Food Lion, Inc.*, 539 S.E.2d 331, 333 (N.C. Ct. App. 2000). However, "there is no duty to protect a lawful visitor against dangers which are either known to him or so obvious and apparent that they reasonably may be expected to be discovered." *Lorinovich v. K Mart Corp.*, 516 S.E.2d 643, 646 (N.C. Ct. App. 1999). "When a plaintiff does not discover and avoid an obvious defect, that plaintiff will usually be considered to have been contributorially [sic] negligent as a matter of law." *Price v. Jack Eckerd Corp.*, 398 S.E.2d 49, 52 (N.C. Ct. App. 1990). Contributory negligence acts as a complete bar to recovery in North Carolina. *Love v. Singleton*, 550 S.E.2d 549, 551 (N.C. Ct. App. 2001).

While the Fourth Circuit has recognized that certain design attributes of a ladder which are in plain view to the climber can constitute an open and obvious hazard, see *Alexander v. Curtis*, 808 F.2d 337 (4th Cir. 1987), plaintiffs have demonstrated that the situation at hand is sufficiently distinguishable such that defendant is not entitled to a judgment as a matter of law on this issue. Unlike the case before the court in *Alexander*, here plaintiffs argue that it was not simply the features of the ladder itself but that the combination of the ladder and access door that

constituted a latent hazard of which plaintiff Danny Hinson was unware. Whether this entryway into the interstitial space constituted an open and obvious hazard cannot be decided as a matter of law by the Court, and plaintiffs have sufficiently demonstrated that this is a genuine issue of material fact.

Additionally, questions remain as to whether plaintiff Danny Hinson was contributorily negligent in causing the accident. The parties dispute whether plaintiff was ever trained in the ladder safety rule of "three points of contact" and whether reasonable care required use of the three points of contact rule when operating on this ladder. There is also a genuine issue of material fact as to whether plaintiff's actions were reasonable for using this particular ladder and not one of the alternatives or whether he was or should have been aware of the potential obstacles inherent in this ladder and door combination. Each of these factual questions will likely be determinative to the question of whether plaintiff was contributorily negligent, and this cannot be determined as a matter of law by the Court at this stage of the proceedings.

Furthermore, the credibility of plaintiff as a witness will be significant to his testimony and critical to several genuine factual disputes in this case, in particular whether he was aware of the danger posed by the door and the manner in which he opened the door and fell from the ladder. Plaintiff's credibility is a factual issue material to defendant's defense that plaintiff was contributorily negligent and cannot be determined by the Court as a matter of law.

For these reasons, the Court finds that genuine issues of material fact remain and therefore summary judgment in defendant's favor should not be granted.

## CONCLUSION

For all the reasons above, defendant's motion to dismiss or, in the alternative, for summary judgment is DENIED. [DE 31].

SO ORDERED, this 10 day of January, 2017.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE